DJW/sr

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**LINDSEY & OSBORNE PARTNERSHIP, L.P.,**

      **Plaintiff,**

      v.                                                           Case No:  08-cv-2301-CM-DJW

**DAY & ZIMMERMANN, INC.,**

      **Defendant**

## MEMORANDUM AND ORDER

On July 18, 2008, the Court held a telephone hearing on Plaintiff's Motion to Expedite Discovery and Memorandum in Support (doc. 4).  Plaintiff Lindsey & Osborne Partnership, L.P. appeared through its counsel, Scott A. Wissel and Thomas M. Martin.  Defendant Day & Zimmermann, Inc. appeared through its counsel, William F. Ford, Jr.  At the conclusion of the telephone hearing the Court granted in part and denied in part Plaintiff's motion to expedite discovery.  This Order memorializes the Court's ruling during the telephone hearing.

**I.**       **BACKGROUND**

Plaintiff is in the business of storing and repairing empty railcars.  Defendant is the current contractor-operator of the Kansas Army Ammunition Plant (the "KSAAP").  According to Defendant, the KSAAP is owned by the federal government and Defendant operates the KSAAP pursuant to a Facility Use Contract with the United States Army.  Defendant alleges that the Facility Use Contract allows Defendant to sublease certain idle facilities at the KSAAP.

Plaintiff and Defendant entered into a lease agreement in September 1999 to sublease a railcar storage area at the KSAAP.  The lease agreement provided for an initial term from October

1, 1999 to July 31, 2002, with five successive options of five years each.

Under Section 2914(a) of the Defense Base Closure and Realignment Act of 1990 (the "BRAC Act") as amended (Pub. L. 101-510; 10 U.S.C. § 2687 note) the Secretary of Defense is authorized to recommend military installations inside the United States for closure and realignment.[1] Six years after the execution of the lease agreement, on May 16, 2005, as part of its base realignment and closure recommendations, the Department of Defense proposed that the KSAAP and certain other military facilities throughout the United States be closed.[2] This recommendation was subsequently approved by the President, debated in Congress, and eventually became law. On February 7, 2006, the Department of Defense issued a notice, pursuant to Section 2905(b)(7)(B)(ii) of the BRAC Act, providing a partial list of military installations closing or realigning pursuant to the 2005 Defense Base Closure and Realignment Report.[3] This list included the KSAAP.[4]

According to the BRAC Act, the Secretary of Defense is required to close all military installations recommended for closure and realign all military installations recommended for realignment. In anticipation of the impending closure of the KSAAP, Defendant claims that the Army did not renew the Facility Use Contract with Defendant, and that the Facility Use Contract will terminate on December 31, 2008 (although Defendant claims it is currently in negotiations with the Army and with the potential buyer of the KSAAP to allow Defendant to remain at the KSAAP after it is sold).

---

[1] *See* Base Closures and Realignments, 70 Fed. Reg. 28030, 28030 (May 16, 2005).

[2] *See id.* at 28054.

[3] *See* Base Closure and Community Redevelopment and Homeless Assistance Act; Base Realignments and Closures, 71 Fed. Reg. 6274 (February 7, 2006).

[4] *See id.* at 6275.

Defendant sent a letter to Plaintiff dated March 17, 2008, purporting to terminate the lease agreement effective December 31, 2008 based on the 2005 amendments to the BRAC Act and the subsequent decision to close the KSAAP. Plaintiff claims that the KSAAP is not scheduled for closure until September 15, 2011. Plaintiff argues that if Defendant is permitted to improperly terminate the lease agreement effective December 31, 2008, then Plaintiff will be required to provide contract termination notices to its customers on or before September 1, 2008.

On July 1, 2007, Plaintiff filed a motion for preliminary injunction requesting that the Court enjoin the Defendant from: (1) terminating the parties' lease agreement; (2) removing or evicting Plaintiff; and (3) interfering with Plaintiff's business activities or opportunities. That same day, Plaintiff also filed a motion to expedite discovery asking the Court to: (1) lift the stay of discovery pending a conference under Fed. R. Civ. P. 26(f); and (2) allow written discovery and deposition discovery by all parties, including; (a) requiring Defendant to respond to any interrogatories, requests for production of documents, and/or requests for admissions within 10 business days of service of any such request; and (b) allowing interrogatories and document requests for such depositions and similar discovery on third parties possibly in possession of documents, information, and other records relevant to this action.

## III.   ANALYSIS

As a general rule, discovery may not commence before the parties have conferred as required by Rule 26(f) of the Federal Rules of Civil Procedure.[5]   "The court may, however, in the exercise

---

[5] Fed. R. Civ. P. 26(d).

3

of its broad discretion, alter the timing, sequence and volume of discovery."[6] Under Fed. R. Civ. P. 26(d), the court is authorized to expedite discovery upon a showing of "good cause."[7] Good cause has been found in cases where the plaintiff seeks a preliminary injunction.[8] "A party that seeks expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures."[9]

Defendant cites *Don King Productions, Inc. v. Hopkins* for various factors a court should consider when determining whether good cause exists, including:

> (1) irreparable injury;
>
> (2) some probability of success on the merits;
>
> (3) some connection between the expedited discovery and the avoidance of the irreparable injury;
>
> (4) some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted;
>
> (5) whether the request is narrowly tailored given the time constraints; and

---

[6] *Alpine Atlantic Asset Mgmt AG v. Comstock*, Civ. A. No. 07-2595-JWL, 2008 WL 618627, at * 1 (D. Kan. Mar. 3, 2008) (citing *Qwest Comm'cs Int'l, Inc. v. WorldQuest*, 213 F.R.D. 418, 418 (D. Colo. 2003)).

[7] *Koch Carbon, LLC v. Isle Capital Corp.*, No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962, at *5 (D. Kan. Mar. 1, 2006) (citing *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.R.D. 675, 676 (D. Colo. 2002)).

[8] *See Pod-Ners, LLC*, 204 F.R.D. at 676 (citing *Revlon Consumer Products Corp. v. Jennifer Leather Broadway, Inc.*, 858 F.Supp. 1268, 1269 (S.D.N.Y.1994), *aff'd*, 57 F.3d 1062 (2d Cir.1995)).

[9] *Alpine*, 2008 WL 618627, at *1 (citing *Qwest*, 213 F.R.D. at 418; *Pod-Ners, LLC*, 204 F.R.D. at 676; *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001)).

>  (6) whether the movant could have avoided such restraints by acting prior to the request.[10]

The court in *Koch Carbon, Inc. v. Isle Capital Corp.* cited and applied some of the factors discussed in *Hopkins*.[11]

While these factors do not provide a hard and fast test, they can assist the Court in determining whether good cause exists to expedite discovery. The Court has considered these factors, with the exception of Plaintiff's likelihood of prevailing on the merits, and finds that Plaintiff has shown good cause to expedite discovery.

### 1.   Irreparable Injury

According to Plaintiff's memorandum in support of its motion for preliminary injunction,[12] if Defendant is permitted to terminate the lease agreement, Plaintiff will be required to send out contract termination notices to its own customers. As a result, Plaintiff claims it will suffer irreparable harm, including: (a) permanent deprivation of its interests in and rights to unique real property, (b) permanent loss of its customers, (c) permanent loss of all of the goodwill it has developed, (d) loss of its entire investment in its business, and (e) the complete and permanent destruction of its business operations at the property. The Tenth Circuit has recognized that loss of

---

[10] *See Don King Productions, Inc. v. Hopkins*, No. 04 Civ. 9705 (PKL), 2004 WL 2997800, at *2 (S.D.N.Y. Dec. 23, 2004) (cited with favor by *Koch Carbon, LLC v. Isle Capital Corp.*, Case No. 05-1010-MLB, 2006 U.S. Dist. LEXIS 36962, at *5-6 (D. Kan. Mar. 1, 2006)).

[11] *See Koch Carbon*, 2006 U.S. Dist. LEXIS 36962, at *5-6 (the court did not address the probability of Plaintiffs' likelihood of success on the merits).

[12] Plaintiff incorporated its Motion for Preliminary Injunction (doc. 2) and Memorandum in Support of its Motion for Preliminary Injunction (doc. 3) in its Reply in Support of Plaintiff's Motion to Expedite Discovery (doc. 15).

customers, loss of goodwill, and threats to a business's viability can constitute irreparable harm.[13] In an attempt to prevent Defendant from terminating the lease agreement, Plaintiff filed a motion for preliminary injunction. In order to prepare for the motion for preliminary injunction, Plaintiff claims it must conduct expedited discovery. The Court finds that Plaintiff could suffer irreparable harm if it is prevented from conducting expedited discovery in order to prepare for its preliminary injunction hearing.

### 2. Some Connection Between the Expedited Discovery and the Avoidance of the Irreparable Harm

Plaintiff claims that if Defendant is permitted to terminate the lease agreement effective December 31, 2008, it will be required to send out contract termination notices to its own customers on September 1, 2008. Plaintiff filed a motion for preliminary injunction in order to stop Defendant from terminating the lease agreement and evicting Plaintiff. Plaintiff asks permission to conduct expedited discovery to allow Plaintiff an opportunity to obtain information to prepare for the hearing on the motion for preliminary injunction. In advance of the request for a preliminary injunction, Plaintiff argues that it must obtain depositions from representatives of Defendant, the local redevelopment authority and possibly the Army. In light of such allegations, the Court finds that there is a connection between the expedited discovery and the avoidance of the irreparable harm.

### 3. Evidence That the Injury Will Result Without Expedited Discovery Looms Greater Than the Injury That the Defendant Will Suffer if the Expedited Discovery is Granted

Plaintiff claims that if it is not permitted to conduct expedited discovery, it will not be able to fully prepare for its preliminary injunction hearing and, thus, could lose its customers, its

---

[13] *See e.g.*, *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 685 F.Supp. 1172, 1181 (D. Kan. 1988).

business, and its goodwill. On the other hand, it does not appear that Defendant will suffer any significant injury if Plaintiff is allowed to conduct expedited discovery. While the Defendant may suffer if Plaintiff is permitted to conduct expedited discovery without any limitations, the Court will limit or avoid such an injury by imposing certain limitations on the expedited discovery. Thus, the Court concludes that the evidence of the injury that Plaintiff will suffer if not permitted to conduct the expedited discovery looms greater than the injury that Defendant may suffer if the request for expedited discovery is granted.

### 4.     **Narrowly Tailored Discovery**

Plaintiff claims that it would limit the proposed expedited discovery to the following topics:

(1) The parties' lease agreement, including the negotiation and termination of the lease agreement;

(2) The Facility Use Contract between the Defendant and the Army, including the negotiation and termination of the Facility Use Contract;

(3) The sale and/or transfer of the KSAAP to the KSAAP Local Redevelopment Planning Authority;

(4) Defendant's future operations at the KSAAP property and any negotiations or agreements related to such operations;

(5) The intended use of the rail system and Plaintiff's KSAAP facilities in the event Plaintiff is evicted from the KSAAP; and

(6) Defendant's motive for acquiescing to the termination of the Facility Use Contract and the lease agreement.

The Court will further limit the proposed expedited discovery to the following type of discovery:

      (1) Five depositions;

      (2) Ten interrogatories;

      (3) Ten requests for production of documents; and

      (4) Three subpoenas.

Based on these limits, the Court concludes that the discovery is narrowly tailored given the time constraints.

### 5. Whether Plaintiff Could Have Avoided Such Restraints by Action Prior to the Request for Expedited Discovery

It appears that Plaintiff knew of Defendant's purported termination of the lease agreement around March 17, 2008 (the date of the termination letter). Plaintiff filed its complaint July 1, 2008. Plaintiff argues that it did not delay in pursuing this action. According to Plaintiff, before filing the motion for preliminary injunction, Plaintiff investigated whether the issue could be resolved without litigation, located counsel, and assisted in the preparation of the pleadings. The Court concludes that Plaintiff could not have avoided the need for expedited discovery by acting prior to its request for expedited discovery.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that good cause exists to grant in part Plaintiff's Motion to Expedite Discovery (doc. 4).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Expedite Discovery (doc. 4) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that both Plaintiff and Defendant may conducted the

following expedited discovery: (1) five depositions, (2) ten interrogatories, (3) ten requests for production of documents, and (4) three subpoenas.  The party responding to the discovery request shall respond within twenty business days of service of the discovery request.

**IT IS FURTHER ORDERED** that the expedited discovery will be limited to the following topics: (1) the parties' lease agreement, including the negotiation and termination of the lease agreement; (2) the Facility Use Contract between the Defendant and the Army, including the negotiation and termination of the Facility Use Contract; (3) the sale and/or transfer of the KSAAP to the KSAAP Local Redevelopment Planning Authority; (4) Defendant's future operations at the KSAAP property and any negotiations or agreements related to such operations; (5) the intended use of the rail system and Plaintiff's KSAAP facilities in the event Plaintiff is evicted from the KSAAP; and (6) Defendant's motive for acquiescing to the termination of the Facility Use Contract and the lease agreement.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 22nd day of July 2008.

s/ David J. Waxse<br>
David J. Waxse<br>
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties