## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **LINDSEY & OSBORNE** | ) | |
| **PARTNERSHIP, L.P.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **Case No. 08-2301-CM** |
| **DAY & ZIMMERMAN, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Plaintiff Lindsey & Osborne Partnership, L.P. operates a railcar storage and repair operation at the Kansas Army Ammunition Plant ("KSAAP") near Parsons, Kansas.  Prior to January 1, 2009, defendant Day & Zimmerman was the facility operator of the KSAAP pursuant to a facility use contract with the United States government.  In 1999, plaintiff and defendant entered into a long-term lease agreement (the "Tenant Use Agreement") for plaintiff to operate its business at the KSAAP.  The case is before the court on plaintiff's claim that defendant breached the Tenant Use Agreement by notifying plaintiff that the lease was terminated.  Plaintiff filed a motion for a preliminary injunction (Doc. 2), and defendant responded by filing a motion to dismiss the complaint (Doc. 57).  The court heard oral argument and received evidence on both motions, and is now prepared to rule.

### I.      Factual Background

In 2005, Congress amended the Defense Base Closure and Realignment Act of 1990 ("BRAC"), which designated the KSAAP for closure on September 15, 2011.  The Army is required to end defendant's facility use contract and close the KSAAP on or before that date.  In 2006, the Labette County Commission formed the KSAAP Local Redevelopment Planning Authority

("LRPA") to plan for the reuse of the KSAAP following its closure.  A successor entity—the LRA—was formed to accept transfer of the property from the Army.

In March of 2008, defendant sent plaintiff a termination letter, stating that the target date for the end of the facility use contract was December 31, 2008, and that it would have to terminate the lease as of that date.  In July of 2008, plaintiff filed suit, alleging the following claims: (1) breach of contract; (2) breach of covenant of quiet enjoyment; (3) promissory estoppel; (4) declaratory judgment; (5) fraud; (6) fraud through silence; and (7) negligent misrepresentation.  Plaintiff seeks relief in the form of a declaration, a preliminary and permanent injunction, and monetary damages.

After initial briefing on plaintiff's motion for a preliminary injunction, defendant sent a letter to plaintiff withdrawing the termination of the lease.  In the letter dated August 20, 2008, defendant stated that "any decision to terminate an ARMS tenant at a BRAC facility will be made by the Army or the LRPA transferee of the BRAC-affected property."  Defendant further stated in the August 20 letter that only the Army has the power to make decisions regarding a third party's ability to use the property after defendant's facility use contract ends.

At this time, plaintiff remains a tenant at the KSAAP.  It is possible that plaintiff may remain a tenant at the KSAAP through the conclusion of its tenancy under the Tenant Use Agreement.  On December 31, 2008, defendant's facility use contract ended, and defendant executed a new "Caretaker Contract" with the Army.  The Caretaker Contract makes defendant the caretaker of the KSAAP between the end of the facility use contract and the transfer of the property out of Army ownership.  It has an initial term of three months, with options to extend the contract for up to three additional three-month terms.  The Caretaker Contract provides that, "Subcontractor agreements for tenancy at the KSAAP will remain in full force and effect and without modification under this

-2-

contract unless otherwise agreed in writing and until such time as license agreements between the subcontractor and the Army Corps of Engineers can be executed." The Army has also assured defendant that it will give at least ninety-days notice if defendant and/or plaintiff will be required to leave the KSAAP.

The Army is participating in ongoing negotiations for transfer of the KSAAP. Various potential transfers of portions of the KSAAP could take place in the spring and summer of 2009. Plaintiff is negotiating with the LRPA to continue its business operations at the KSAAP if and when the LRA takes title to the property. The Army has not yet announced its position as to how the Tenant Use Agreement between plaintiff and defendant will be treated upon the closure and/or transfer of the KSAAP. Army civilian employees have informed defendant that they believe the Army will transfer the KSAAP subject to plaintiff's Tenant Use Agreement, but plaintiff has been told that the LRA does not have to accept the Tenant Use Agreement.

## II.   Defendant's Motion to Dismiss

Defendant moves to dismiss the case because the case is not ripe, or alternatively to dismiss the claims for declaratory and injunctive relief for failure to join the United States as a required and indispensable party. Plaintiff responds with a number of arguments, including (1) a contention that defendant's motion is untimely and (2) a request to amend its complaint if the court determines that it cannot resolve the motions because some of the facts alleged in the complaint are outdated.

Regardless of whether defendant's motion is timely, the court has a duty to examine its own jurisdiction. Ripeness is a jurisdictional requirement. *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1444 (10th Cir. 1997). Article III of the United States Constitution grants federal courts subject matter jurisdiction only over "cases and controversies." This mandate is "intended 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements.'"  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995).  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)) (additional citation and internal quotation marks omitted).  In determining whether a claim is ripe, the court must evaluate two issues: "(1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration."  *U.S. West Inc. v. Tristani*, 182 F.3d 1202, 1208 (10th Cir. 1999).

In determining whether a case is fit for judicial resolution, the court considers "whether the matter involves uncertain events which may not happen at all, and whether the issues involved are based on legal questions or factual ones."  *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1237 (10th Cir. 2004).  The existence of factual issues needing further development may indicate that the case is not fit for resolution.  *Id.*  Here, plaintiff's claims rest squarely on events that may or may not occur; whether plaintiff will be told to vacate the property is speculative.  Defendant has withdrawn its notice of termination and plaintiff remains on the property at the present time.  And there are a number of factual issues that require further development.  The court determines that the claims raised in plaintiff's complaint are not fit for judicial resolution.

When considering the potential hardship of withholding judicial consideration, the court examines "'whether the challenged action creates a direct and immediate dilemma for the parties.'"  *Id.* (quoting *New Mexicans for Bill Richardson*, 64 F.3d 1498–99).  Here, the challenged action—termination of the contract—has been withdrawn.  There is no longer a direct and immediate dilemma.  As a result of the court not hearing plaintiff's claims now, plaintiff may in fact be given another termination notice.  But plaintiff could be given another termination notice even if

the court ruled on plaintiff's request for injunctive relief and heard its other claims.  There is nothing to stop plaintiff—at the time of receiving notice— from filing another suit requesting temporary and permanent injunctive relief.  The court understands that plaintiff may suffer some hardship because of the uncertainty of whether it will be allowed to remain at the KSAAP.  But while the court empathizes with plaintiff's desire for peace of mind, plaintiff's desire does not create an actual case or controversy.  Without a case or controversy, the court lacks subject matter jurisdiction.

In reaching this decision, the court has considered all of the evidence presented by the parties, even if not specifically mentioned here.  *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000) (stating that consideration of evidence not contained in the pleadings is permissible when a party attacks the factual basis for subject matter jurisdiction).  While the evidence does not conform precisely to plaintiff's complaint, the court does not grant plaintiff's informal request to amend the complaint.  Amendment is unnecessary under these circumstances and would not change the outcome of the matter.  The court also does not find that the determinations it makes here are intertwined with the merits of the case.  For this reason, it is not necessary to convert defendant's motion to a motion for summary judgment or otherwise delay resolution of the ripeness issue.  *See Coalition for Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001) (stating that "where resolution of the jurisdictional question is intertwined with the merits of the case," and the court refers to evidence outside the pleadings, the court converts a motion to dismiss to one for summary judgment).

In sum, the speculative and evolving nature of the events at issue in this case preclude the court from finding that an actual case or controversy is present.  The court lacks jurisdiction over the matter and dismisses it without prejudice.  Plaintiff's request for injunctive relief is moot.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss Plaintiff's Complaint

(Doc. 57) is granted.  Plaintiff's complaint is dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Preliminary Injunction (Doc. 2) is denied as moot.

Dated this 23rd day of February 2009, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**